UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ANNETTE OLSEN, and DAVID OLSEN,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA,<br><br>Defendant. | 4:19-cv-__4090____<br><br>VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs, through counsel, state as follows in support of their Verified Complaint against Defendant Farmers Mutual Insurance Company of Nebraska:

## PARTIES

1. Plaintiffs Annette Olsen, and David Olsen (collectively "the Olsens") are mother and son and, at all relevant times were, residents of Spink County, South Dakota.

2. Defendant Farmers Mutual Insurance Company ("Farmers Mutual") is an insurance company that is incorporated in the State of Nebraska, with its principal place of business also being in Nebraska.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1332, diversity of citizenship.

4. The damages at issue exceed $75,000.

5. This Court is the proper venue under 28 U.S.C. §§ 1391(b)(1) and (c)(2).

**BACKGROUND AND FACTS**

6. The Olsens purchased a policy of insurance (policy no. FG896668) ("the Policy"), which was in effect as of December, 6, 2012, and remained in effect at all relevant times thereafter.

7. The Policy provided property damage coverage for hail, wind, and related water damage.

8. The Policy also provided loss of use coverage and additional living expenses coverage.

9. On or about June 21, 2013, the Olsens' homes, personal property, equipment, and other buildings, were damaged in a hail/windstorm ("the Storm").

10. The Storm caused extensive, widespread, functional, and plainly visible damage to the Olsen's homes, personal property, equipment, and other buildings covered by the Policy.

11. The Storm caused the loss of use of the Olsen's homes, personal property, equipment, and other buildings.

12. The Storm caused the Olsens to experience increased cost of living expenses.

13. The Olsen's submitted a timely claim to Farmers Mutual for the damage to their homes, personal property, equipment, and other buildings, caused by the Storm.

14. The Olsen's submitted a timely claim to Farmers Mutual for the loss of use of their homes, personal property, equipment, and other buildings, caused by the Storm.

15. The Olsen's submitted a timely claim to Farmers Mutual for the additional living expenses caused by the Storm.

16. Farmers Mutual classified the Olsen's claim as a "large loss."

17. At all relevant times, Steve Hostert was an agent for Farmers Mutual.

## The Farmhouse

18. On July 9, 2013, Steve Hostert told David Olsen that Farmers Mutual estimated the cost of fixing the farmhouse to be $92,000.

19. Farmers Mutual, however, initially attempted to settle the cost of fixing the farmhouse at $36,000.00

20. After doing some investigation of his own, David Olsen explained to Steve Hostert that he did not think $92,000 would be enough to fix the damage to the farmhouse where his mother and father, Art, lived.

21. On July 24, 2013, Steve Hostert increased the offer of benefits to $110,000 for the farmhouse.

22. On July 25, 2013, Steve Hostert increased the offer of benefits to $115,000 for the farmhouse.

23. On August 26, 2013, David Olsen explained to Steve Hostert that his father, Art Olsen, thought that the costs to repair the farmhouse was substantially more than $115,000 offered by Farmers Mutual.

24. On November 1, 2013, David Olsen told Steve Hostert that $115,000 would not be enough to fix the Storm related damage to the farmhouse.

25. Steve Hostert asked David Olsen if he had any "numbers" to support the idea that $115,000 was not enough to properly fix the Storm-related damage to the farmhouse.

26. As of November 1, 2013, David Olsen did not have any specific "numbers" to rebut Steve Hostert's position that $115,000 was appropriate to properly fix the Storm related damage to the farmhouse.

27. On November 7, 2013, a third-party vender, Omni Restoration, inspected the farmhouse.

28. Omni Restoration provided an estimate to "fix" the farmhouse on November 20, 2013.

29. The Omni Restoration estimate did not include an estimate to replace the damaged plaster in the farmhouse.

30. On February 25, 2014, Steve Hostert increased the offer of benefits to $146,723 for the farmhouse.

31. David Olsen explained to Steve Hostert, again, that he thought that the amount needed to properly fix the farmhouse exceeded $175,400, which was the Policy's limits.

32. On March 17, 2014, Omni Restoration informed Steve Hostert that it was not willing to perform the work for the estimate it came up with on the farmhouse because the actual costs would be substantially greater.

33. On March 17, 2014, more than eight months after his initial offer of $92,000 for the Storm damage to the farmhouse, Steve Hostert informed David Olsen that Farmers Mutual would pay $175,400 for the damage caused by the Storm to the farmhouse.

**Annette's Personal Property**

34. The amount of property damage to Annette and Art Olsen's personal property exceeded $301,000.00, which was the Policy's limit for Annette Olsen's personal property coverage.

35. However, Farmers Mutual only offered Annette Olsen $289,878.23 for the damage to her personal property.

36. Steve Hostert told Annette Olsen that Farmers Mutual would only agree to pay her for the damage to the personal property if she signed a release of her claim under the Policy with regard to the personal property.

37. Specifically, on May 15, 2015, Steve Hostert told Annette Olsen that "it would have to be in exchange for a release on those items."

38. The Policy does not require an insured to sign a release in order to receive benefits otherwise owed under the Policy.

39. Relying on Steve Hostert's representations that she needed to sign a release to be able to receive the benefits otherwise owed under the Policy, Annette Olsen signed the release.

40. Annette Olsen is still owed $11,121.77 for the damage to her personal property.

### The Hunting Lodge

41. In addition to the farmhouse, the Policy also provided coverage for the Olsens' hunting lodge, which was a steel building where Annette Olsen and her husband lived.

42. The Storm was so severe that the hail had punctured through the steel exterior of the hunting lodge.

43. As a result of the punctured holes throughout the roof, the heavy rains entered the dwelling damaging the interior.

44. The interior of the hunting lodge needed to be gutted because of the Storm damage.

45. The water from the Storm damaged the floor coverings in the hunting lodge as well.

46. The floor coverings became saturated and were not restorable as a result of the Storm damage.

47. Farmers Mutual paid $300,843.49 in benefits for the coverage to the hunting lodge.

48. The amount of damage caused by the Storm exceeded $430,000, which is the Policy limits for the hunting lodge.

49. The amount of benefits owed under the Policy for the Storm-related damage to the hunting lodge exceeds the $300,843.49 paid by Farmers Mutual.

50. Farmers Mutual knew, or recklessly disregarded, the fact that the costs to properly fix the Storm related damaged to the hunting lodge exceeded the $300,843.49 paid.

51. At least an additional $129,156.51 is owed under the Policy for the damage caused by the Storm to the hunting lodge.

### Blanket Farm Personal Property

52. The Policy also separately provided "Blanket Farm Personal Property" coverage, with limits of $190,000.

53. The "Blanket Farm Personal Property" coverage applied to a tractor owned by the Olsens.

54. The Storm included hailstones the size of baseballs.

55. The tractor was hit by numerous baseball sized hailstones.

56. During the Storm, the fill cap was knocked off, which resulted in water getting into the oil supply.

57. When the tractor was moved, it resulted in the contaminated oil/water mixture becoming mixed through the hydraulic system, which damaged the tractor's hydraulic system.

58. Farmers Mutual wrongfully denied coverage for the damage to the tractor.

59. The baseball-size hailstones also caused holes in the various buildings located on the insured premises, which resulted in extensive and widespread water damage to the Olsens'

farm personal property other than the tractor, including tools, horse tack and blankets, and numerous other farming related property.

60. In 2015, Farmers Mutual offered the Olsens an additional $30,682, for a total of $35,015.80, for the Blanket Farm Personal Property coverage on the condition that the Olsens waive any further claim for the damage to the farm personal property.

61. The Policy does not condition the payment of benefits under the Blanket Farm Personal Property Coverage on the insured signing a release with the insurer.

62. Because the Olsens would not sign the release, Farmers Mutual would not pay what it undisputedly owed under the Blanket Farm Personal Property Coverage.

63. After the Olsens retained attorneys, Farmers Mutual finally paid the Olsens the additional $30,682 unquestionably owed under the Blanket Farm Personal Property Coverage even though the Olsens did not sign the release previously insisted on by Farmers Mutual.

64. The amount of benefits owed under the Policy's Blanket Farm Personal Property Coverage for the Storm-related damage to the farming personal property exceeds the total payments of $35,015.80 paid by Farmers Mutual.

65. Farmers Mutual knew, or recklessly disregarded, the fact that the damage to the farming personal property exceeded the $35,015.80 paid under the Blanket Farming Personal Property coverage.

**Loss of Use/Necessary Repair After Loss/Emergency Removal/Debris Removal**

66. The Policy also provided coverage to the Olsens for the loss of use of their property, necessary repair after loss, emergency removal of property, and debris removal caused by the Storm

67. Immediately after the Storm, Annette Olsen and David Olsen's homes were uninhabitable.

68. Farmers Mutual paid David Olsen $10,227.47 for the loss of use of his home.

69. David Olsen suffered more than $10,227.47 in damages for the loss of use of his home as a result of the Storm.

70. Farmers Mutual paid Annette Olsen $42,414.78 for the loss of use of her home.

71. Annette Olsen suffered more than $42,414.78 for the loss of use of her home as a result of the Storm.

72. Also as a result of the Storm, David Olsen had also had to take emergency steps to protect and repair the real property, including, but not limited to, boarding the broken windows, drying out property that had become wet, and moving property to a safer location.

73. Also as a result of the Storm, Annette Olsen and David Olsen each had to take emergency steps to protect and repair their property, including their personal property, which involved them personally sorting, organizing, drying, and storing countless personal property items.

74. While the removed personal property was stored, it sustained additional damage.

75. Also as a result of the Storm, Annette Olsen and David Olsen each had to remove extensive debris, which involved them personally sorting, organizing, and throwing away countless personal property items.

76. To-date, Farmers Mutual has not compensated Annette Olsen or David Olsen for their time and labor incurred in taking the steps necessary to repair the damage to their property caused by the Storm to avoid additional damage to their property, which is separately covered under the Policy.

77. To-date, Farmers Mutual has not compensated Annette Olsen or David Olsen for their time and labor incurred in taking the emergency steps to protect the property, which is separately covered under the Policy.

78. To-date, Farmers Mutual has not compensated Annette Olsen or David Olsen for their time and labor incurred in removing debris, which is separately covered under the Policy.

**Additional Structures**

79. The Policy also covered a garage, with limits of $10,000.

80. Farmers Mutual has paid $2,186.06 for the damage caused by the Storm to the garage.

81. More than $2,186.06 is needed to pay for the Storm damage to the garage.

82. The Policy also covered a storage shed, with limits of $5,000.

83. Farmers Mutual has paid $1,331.32 for the damage caused by the Storm to the storage shed.

84. More than $1,331.32 is needed to pay for the Storm damage to the storage shed.

85. The Policy also covered a granary, with limits of $30,000.

86. Farmers Mutual has paid $9,353.16 for the damage caused by the Storm to the granary.

87. More than $9,353.16 is needed to pay for the Storm damage to the granary

88. The Policy also covered a hay building, with limits of $20,000.

89. Farmers Mutual has paid $14,087.38 for the damage caused by the Storm to the hay building.

90. More than $14,087.38 is needed to pay for the Storm damage to the hay building.

91. The Policy also covered a machine shed, with limits of $100,000.

92. Farmers Mutual has paid $43,197.69 for the damage caused by the Storm to the machine shed.

93. More than $43,197.69 is needed to pay for the Storm damage to the machine shed.

### Farmers Mutual Claims Handling Practices

94. Farmers Mutual has a pattern and practice of limiting its payments to its insureds by failing to conduct reasonable investigations, delaying the payment of benefits owed, and denying the full payments of benefits otherwise owed under its policy.

95. Farmers Mutual's purported investigation of the Olsens' claims contains multiple examples of it not conducting a reasonable investigation and not properly processing its insureds' claims to the detriment of its insureds and the benefit of Farmers Mutual.

96. Farmers Mutual knew or recklessly disregarded the fact that its claims handling process of delaying and denying the full payment of benefits was biased in favor of Farmers Mutual.

97. Farmers Mutual's practice of delaying and denying the full payment of benefits owed under the Policy caused additional damage to the Olsens.

98. Farmers Mutual has engaged in a pattern and practice of denying and delaying the payment of the full amount of benefits owed under the Policy.

99. Farmers Mutual had a duty to perform a reasonable investigation of the Olsens' claims.

100. Part of each premium Farmers Mutual charges includes a portion for the expenses required to properly investigate claims.

101. Farmers Mutual is required to conduct a reasonable investigation of an insured's claim.

102. A reasonable investigation requires the insurer to look for reasons to pay, and not just reasons not to pay.

103. In evaluating the Olsens' claims, Farmers Mutual had a duty to give just as much consideration to the Olsen's interests as it gave to its own interests.

104. Farmers Mutual had a duty to assist the Olsens with identifying facts that support a payment that would fully fix the Storm related property damage.

105. Farmers Mutual had a duty to assist the Olsens with identifying portions in its policy that provided additional coverage for the Olsens as a result of the Storm, including the loss of use, additional living expenses, and lost rent for the hunting lodge.

106. Farmers Mutual had a duty to inform the Olsens of any information obtained during its investigation of the claims regardless of whether the information would result in coverage or an increase in the amount needed to fully compensate the Olsens for damage caused by the Storm and covered by the Policy.

107. Farmers Mutual could not eliminate its duties of good faith and fair dealing by delegating them to an agent to perform the inspection and evaluate the claim.

108. Farmers Mutual is responsible for the investigation and evaluation of the Olsens' claims by its agents.

109. Farmers Mutual's claims handling process, as described in this Complaint, is designed to deny paying its insureds, including the Olsens, the full amount owed under their policies.

110. Farmers Mutual's claims handling process, as described in this Complaint, is designed to delay paying its insureds, including the Olsens, the full amount owed under their policies.

111. As a result of Farmers Mutual's claims handling process, as described in this Complaint, the Olsens have been damaged as follows:

   a. The Olsens has been deprived of the benefits of the contract.
   b. The Olsens have experienced increased expenses, aggravation, fear, annoyance, frustration, distress, and inconvenience due to the wrongful denial and delay of payments for their claims.
   c. The Olsens were forced to retain a lawyer at their personal expense.

<u>**COUNT 1**</u>
*Breach of Contract*

112. The Olsens restate the preceding paragraphs of this Complaint.

113. Farmers Mutual has breached the contract of insurance with the Olsens by failing to pay the full amount of benefits owed under the Policy in a timely manner.

## COUNT 2
### *Bad Faith*

114. The Olsens restate the preceding paragraphs of this Complaint.

115. Farmers Mutual is intentionally or recklessly utilizing a claims handling process designed to maximize its profits at its insureds' expense.

116. Farmers Mutual is intentionally or recklessly utilizing a claims handling process designed to delay the payment of benefits owed under the terms of the Policy.

117. Farmers Mutual is intentionally or recklessly utilizing a claims handling process designed to deny the full payment of benefits owed under the terms of the Policy.

118. Farmers Mutual intentionally or recklessly withheld information from the Olsens with regard to the coverages provided by the Policy, including the loss of use coverage.

## COUNT 3
### *Fraud/Deceit*

119. The Olsens restate the preceding paragraphs of this Complaint.

120. Farmers Mutual made false representations to the Olsens regarding coverage, including, but not limited, to the false representation that the Olsens' policy would not pay for repairs that the Olsens, themselves, performed, or that the Olsens needed to sign a release in order to receive payment for amounts already due under the policy.

121. Farmers Mutual similarly withheld from the Olsens that the Olsen's policy would cover repairs that the Olsens performed and that the Olsens did not need to sign a release to receive payments for amounts already due under the policy.

122. The Olsens relied on Farmers Mutual's misrepresentations and deceits to their detriment and were proximately injured thereby.

## COUNT 4
### *Punitive Damages*

123. The Olsens restate the preceding paragraphs of this Complaint.

124. Farmers Mutual acted with oppression, fraud, and/or malice, as established in this Complaint, and punitive damages are necessary and appropriate in order to punish and deter.

## COUNT 5
### *Vexatious Refusal to Pay*

125. The Olsens restate the preceding paragraphs of this Complaint.

126. Farmers Mutual unreasonably and vexatiously refused to pay amounts owing under the Policy with regard to the 2013 claim, requiring the Court to award reasonable attorneys' fees as authorized under SDCL § 58-12-3.

## COUNT 6
### *Unfair Claims Practices*

127. The Olsens restate the preceding paragraphs of this Complaint.

128. Farmers Mutual failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the Olsens' claims, in violation of SDCL § 58-33-67(3).

129. Farmers Mutual further failed to adhere to reasonable standards for the prompt investigation of the Olsens' claims, in violation of SDCL § 58-33-67(1).

130. The Olsens are entitled to their attorneys' fees due to Farmers Mutual's unfair claims practices, per SDCL § 58-33-46.1.

## **R**EQUESTED **R**ELIEF

The Olsens request the following relief:

1.     Enter judgment in the Olsens' favor.

2.     Award the Olsens their damages, plus pre-judgment interest.

3.     Award the Olsens their attorneys' fees and costs as allowed by law.

4.     Award the Olsens punitive damages as allowed by law.

5.     Grant such other further relief as the Court deems appropriate.

**T**HE **O**LSENS **D**EMAND A **J**URY **T**RIAL

Dated this 20th day of May, 2019.

BRENDTRO LAW FIRM, P.C.

/s/ Robert D. Trzynka
Robert D. Trzynka
Daniel K. Brendtro
1201 W. Russel Street
PO Box 2583
Sioux Falls, SD 57101-2583
(605) 951-9011
bobt@hovlandrasmus.com
dan@brendtrolawfirm.com

15

STATE OF SOUTH DAKOTA )
                       :ss
COUNTY OF LINCOLN      )

Annette Olsen, being first duly sworn, states that: she is one of the Plaintiff in the above-captioned action; she has read the foregoing Verified Complaint and Demand for Jury Trial, and the same is true, except as to those matters stated upon information and belief, and, as to such matters, she believes the same to be true.

Dated: May 17, 2019.

_____
ANNETTE OLSEN

Subscribed and sworn to before me on May 17, 2019.

_____
Notary Public - South Dakota
My commission expires: 3-24-2023

(SEAL)

**VERIFICATION**

STATE OF SOUTH DAKOTA )
                       :ss
COUNTY OF LINCOLN      )

David Olsen, being first duly sworn, states that: he is one of the Plaintiff in the above-captioned action; he has read the foregoing Verified Complaint and Demand for Jury Trial, and the same is true, except as to those matters stated upon information and belief, and, as to such matters, he believes the same to be true.

Dated: May 17, 2019

_____
DAVID OLSEN

Subscribed and sworn to before
me on May 17, 2019.

_____
Notary Public - South Dakota
My commission expires: 3-24-2023

15

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

19-cv-4090

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANNETTE OLSEN, and DAVID OLSEN

### DEFENDANTS
FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA

**(b)** County of Residence of First Listed Plaintiff: SPINK
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: LANCASTER
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ROBERT D. TRZYNKA and DANIEL K. BRENDTRO, BRENDTRO LAW FIRM, P.O. BOX 2583, SIOUX FALLS, SD 57101, (605) 951-9011

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, diversity of citizenship
Brief description of cause:
Defendants vexatiously denied plaintiff's insurance claim, delayed payment and failed to act in good faith.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____